UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ATLEE SWANSON, individually and as
administratrix of the estate of ALVIN NELSON III,

       Plaintiff,

    v.

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS
COMMISSIONER JOSEPH PONTE, CORIZON
HEALTH INCORPORATED and JOHN and JANE
DOES,

       Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**

16-CV-3231 (MKB)

MARGO K. BRODIE, United States District Judge:

  Plaintiff Atlee Swanson commenced the above-captioned action on June 17, 2016,

individually and as administratrix of the estate of her son, Alvin Nelson III, alleging that

numerous institutional and individual defendants[1] violated Nelson's constitutional rights by

denying him adequate medical care and causing his death when he was a pre-trial detainee at

Rikers Island Correctional Facility.  (Compl., Docket Entry No. 1.)  Plaintiff filed an Amended

Complaint on December 5, 2016, against the City of New York, New York City Department of

---

   [1]  The original Complaint named as Defendants the New York City Department of
Corrections, the New York City Department of Health, Rikers Island Correctional Facility,
Department of Corrections Commissioner Joseph Ponte, the George Motchan Detention Center
("GMDC") Facility, "GMDC Medical Clinic/Medical Facility," Corizon Health Incorporated, and
John and Jane Doe medical personnel.  (Compl., Docket Entry No. 1.)  The Court held a pre-
motion conference on November 4, 2016, and granted Plaintiff leave to file an Amended
Complaint.  (Min. Order dated Nov. 4, 2016.)  The Amended Complaint removes as Defendants
the New York City departments and the GMDC Facilities and adds the City of New York.  (Am.
Compl., Docket Entry No. 20.)

Corrections Commissioner Joseph Ponte, Corizon Health Incorporated, and John and Jane Doe employees of Rikers Island, Corizon Health, the New York City Department of Corrections and the City of New York.  (Am. Compl., Docket Entry No. 20.)  Plaintiff alleges claims for violations of Nelson's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, conspiracy under section 1983, supervisory and municipal liability under section 1983, "neglect/failure to prevent/intercede & conspiracy to deprive rights" under 42 U.S.C. §§ 1983, 1985 and 1986, "caused to be subjected" under section 1983, medical malpractice, wrongful death, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, loss of consortium and punitive damages.  (*Id.* ¶¶ 85–232.)  The City of New York (the "City") moves to dismiss the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and insufficient service of process and, in the alternative, to dismiss Plaintiff's claims for: (1) inadequate medical care under the Fourth and Eighth Amendments of the U.S. Constitution,[2] (2) conspiracy under sections 1983, 1985 and 1986, (3) supervisory liability, (4) municipal liability, (5) "neglect/failure to prevent/intercede & conspiracy to deprive rights," (6) "caused to be subjected" under section 1983 and (7) negligent or intentional infliction of emotional distress for failure to state a claim pursuant to Rule 12(b)(6).[3]  (Def. Mot. to Dismiss ("Def. Mot.") 2, Docket Entry No. 21; Decl. of

---

[2]  As the Court explains below, Plaintiff has not explicitly alleged an Eighth Amendment violation but invokes the language of "cruel and unusual punishment" in the context of her claim for violations of the Fourth and Fourteenth Amendments.  (*See* Am. Compl. ¶¶ 86–88.)

[3]  The City does not challenge Plaintiff's claim for deliberate indifference to Nelson's medical needs to the extent that Plaintiff brings such a claim pursuant to the Fourteenth Amendment's due process clause, nor does it challenge Plaintiff's claims for medical malpractice, wrongful death, general negligence or punitive damages.  (Def. Mem. in Supp. of Def. Mot. ("Def. Mem.") 1, Docket Entry No. 23.)

2

J.C. O'Brien in Supp. of Def. Mot. ("O'Brien Decl."), Docket Entry No. 22.)  For the reasons set forth below, the Court denies the City's motion to dismiss for insufficient service of process and personal jurisdiction.  The Court grants the City's motion to dismiss for failure to state a claim and dismisses Plaintiff's Fourth and Eighth Amendment claims, conspiracy claims under sections 1983 and 1985, failure to intercede claim under section 1986, as well as Plaintiff's claims for supervisory liability, municipal liability, "caused to be subjected" under section 1983 and negligent and intentional infliction of emotional distress.

## I.  Background

### a.  Factual background

The Court assumes the truth of the factual allegations for the purpose of deciding this motion.  Plaintiff alleges that between October of 2014 and January 21, 2015, while Nelson was a pre-trial detainee in the care and custody of Defendants at Rikers Island, Nelson was denied adequate and timely medical care despite his requests for such care.  (*See* Am. Compl. ¶¶ 27–29.)

In "about the second to third week of October 2014," Nelson visited the medical staff of GMDC with a cold, chills and a fever of 105 degrees, and the staff "merely sent [Nelson] back to his cell and gave him an aspirin or tylenol." (*Id.* ¶ 34.)  Nelson spoke to Plaintiff about this incident and said that he had "called for sick call" and was waiting to be treated, that he felt like he was "burning up" and his voice sounded raspy.  (*Id.* ¶ 35.)  The next day, Nelson again presented to GMDC and complained of the same symptoms, and again, the GMDC staff sent him back to his cell with aspirin or tylenol.  (*Id.* ¶ 36.)  Through October and November of 2014, these symptoms continued and worsened, and Nelson became physically weaker and complained of additional symptoms: his right shoulder felt like it was "on fire," he suffered from a loss of appetite and was so physically weak that he could not walk.  (*Id.* ¶ 37.)

3

Plaintiff called and complained of this treatment to female GMDC corrections officer Mitchell, and was told by Mitchell and her captain that Nelson would "just have to wait." (*Id.* ¶¶ 42–43.) Nelson told Plaintiff that he was being made to wait for weeks to see a doctor and that he was perceived not to be suffering from anything severe enough to warrant treatment, even though he was repeatedly coughing up blood, feverish, and unable to walk. (*Id.* ¶¶ 44–45.) In December of 2014, Plaintiff continued to inquire into the handling of Nelson's health, calling the New York Statement Department of Corrections and Community Supervision ("DOCCS"), Rikers, and GMDC, as well as New York City's 311 line. (*Id.* ¶ 46.) In or around December of 2014, Nelson saw a doctor at GMDC, who advised him that "so long as you can put your arms over your head and can touch your toes, then there's nothing wrong with you." (*Id.* ¶ 48.)

Sometime in early January of 2015, a nurse in the GMDC infirmary "felt bad to see [Nelson] in his continuing worsening state and that no one there was doing anything about it," and finally drew Nelson's blood to send for testing. (*Id.* ¶ 50.) On January 21, 2015, Nelson was transported to Bellevue Hospital for treatment. (*Id.* ¶ 51.)

Between January 21, 2015 and April 6, 2015, Nelson was hospitalized in the Bellevue Hospital Intensive Care Unit. (*Id.* ¶ 53.) Doctors at Bellevue Hospital told Nelson and Plaintiff that Nelson was suffering from terminal stage IV gall bladder cancer that had metastasized to other organs, and "that it was terminal and that had it been caught earlier and/or had he been brought to Bellevue earlier, it would not have been terminal and he could have under[gone] chemotherapy and/or radiation." (*Id.* ¶¶ 53–54.) Because Nelson's cancer had metastasized to his bile duct, liver, spleen and spine, he suffered from blood clots and a stroke. (*Id.* ¶ 61.) He underwent "emergency life-saving surgery . . . from which he then became and remained paralyzed on the left sized of his body," and which "directly and proximately caused his wrongful

4

death on or about April 6, 2015." (*Id.*)

Plaintiff alleges that Defendants were deliberately indifferent to Nelson's life and health, conspired to deny him adequate medical care because of his race, denied him adequate care, subjected him to cruel and unusual punishment, deviated from accepted standards of medical practice, and failed to train and supervise medical staff and employees who saw Nelson at GMDC. (*Id.* ¶ 64.) Plaintiff seeks compensatory and punitive damages for the denial of medical care, as well as damages for loss of services and companionship with Nelson and Nelson's two minor children. (*Id.* ¶ 65.)

## II. Discussion

### a. Standards of review

#### i. Rules 12(b)(2) and 12(b)(5)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)); *see also Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 44–45 (2d Cir. 2016) ("In opposing a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing that the court has jurisdiction over defendants." (citations, alterations and internal quotation marks omitted)). "To establish personal jurisdiction, [a plaintiff] must show that [the defendant] has minimum contacts with the forum and was properly served." *Howell v. Campbell*, No. 15-CV-3705, 2016 WL 1241529, at *2 (S.D.N.Y. Mar. 23, 2016) (citing *Salmassi e. Kfr. v. Euro-America Container Line Ltd.*, 08-CV-4892, 2010 WL 2194827, at *4 (S.D.N.Y. June 1, 2010)).

Rule 12(b)(5) permits a party to move to dismiss the complaint for insufficient service of process.[4]  Fed. R. Civ. P. 12(b)(5).  "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint to determine whether it has jurisdiction."  *George v. Prof. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016)); *see also Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant.").  A court considers whether the plaintiff has complied with Rule 4, which governs the content, issuance and service of a summons.  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."  *Id.* (citation omitted); *accord Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).

### ii.  Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."  *Concord Assocs., L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); see also *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).

---

[4]  Rule 12(b)(4) also provides a mechanism for a defendant to interpose an objection to the sufficiency of process.  "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service.  Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons."  5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.).  "A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."  *Id.*

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); see also *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Insufficient service of process

The City argues that despite repeated notices to Plaintiff, the City was never served with a summons in this action. (Def. Mem. 11.) Plaintiff acknowledges that the summons lacked the seal of the Court and signature of the Clerk of Court, but argues that a technical deficiency does not warrant dismissal because the City has not suffered prejudice from the error. (Pl. Opp'n Mem. 26.)

Under Rule 4(b), "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal." Fed. R. Civ. P. 4(b). "If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." *Id.*; *see also id.* 4(a)(1)(F) & (G) (requiring that a summons be signed by the clerk and bear the court's seal). "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) [ninety days] and must furnish the necessary copies to the person who makes service." *Id.* 4(c)(1). Rule 4(m) provides that:

> If a defendant is not served within [ninety] days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.* 4(m). "It is clear under the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good cause,'" and "[t]he first clause of Rule 4(m), which makes no mention of good cause, grants discretion to district courts in a backhanded fashion by dictating that they . . . must decide to dismiss . . . or decide not to dismiss. But no criteria for this decision are supplied in the rule itself." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). In determining whether a discretionary extension is appropriate absent good cause, a court considers the following factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by extending the plaintiff's time for service. *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases); *see also Soos v. Niagara County*, 195 F. Supp. 3d 458, 467 (W.D.N.Y. 2016); *Howell*, 2016 WL 1241529, at *4; *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006).

Although "[t]echnical errors in a summons generally do not render service invalid," where the error "actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *DeLuca*, 695 F. Supp. 2d at 65 (citations omitted); *see also Durant v. Traditional Invs., Ltd.*, No. 88-CV-9048, 1990 WL 336611, at *4 (S.D.N.Y. Mar. 22, 1990) ("When the error in the summons goes to form rather than substance, amendment . . . should be freely granted . . . as courts should not deny a plaintiff her day in court due to technical imperfections in service."); *Macaluso v. N.Y.S. Dep't of*

*Envtl. Conserv.*, 115 F.R.D. 16, 17 (E.D.N.Y. 1986 (stating that "amendments to process are freely given because courts do not wish to deny plaintiffs their day in court for failure to observe mere technicalities"); *cf. Osrecovery, Inc. v. One Grp. Int'l, Inc.*, 234 F.R.D. 59, 60 (S.D.N.Y. 2005) ("Although minor or technical defects in a summons in certain circumstances do not render service invalid, defects that are prejudicial to the defendant or show a flagrant disregard for [Rule 4] do.").

"Courts in the Second Circuit are split as to whether an unsigned and unsealed summons is a technical defect or a flagrant disregard of Rule 4." *DeLuca*, 695 F. Supp. 2d at 65 (collecting cases); *compare Kriger v. Am. Express Fin. Advisors*, No. 98-CV-782E(F), 2000 WL 207119, at *4 (W.D.N.Y. Feb. 16, 2000) (denying the defendant's motion to dismiss for insufficient service where the absence of the clerk's signature and the court's seal were "mere technical defects") *with Macaluso*, 115 F.R.D. at 18 ("This [c]ourt . . . does not view service of an unsigned, unsealed summons not issued by the court clerk as a mere technical defect. Instead, it amounts to a complete disregard of requirements of process set forth clearly and concisely in Rule 4.").

Here, the Court need not resolve whether the deficiencies in the summons amount to technical error or flagrant disregard of Rule 4 because, regardless, the Court exercises its discretion under Rule 4(m) to allow amendment.

On June 17, 2016, the Clerk of Court directed Plaintiff to submit summonses. (*See* Notice dated June 17, 2016.) Plaintiff does not appear to have done so. On August 24, 2016, the City requested an extension of time to answer the Complaint or move to dismiss. (Def. Letter dated Aug. 24, 2016, Docket Entry No. 4.) On August 26, 2016, Magistrate Judge Robert Levy granted the City's request and directed Plaintiff's counsel to file a summons and affidavit of service by

September 12, 2016.  (Order dated Aug. 26, 2016.)  On October 13, 2016, the City filed a letter

requesting a pre-motion conference in anticipation of a motion to dismiss, and, in the letter, noted

that it had not been properly served.  (Def. Pre-Mot. Conf. Letter, Docket Entry No. 6.)  The next

day, Plaintiff filed numerous entries titled "SUMMONS returned executed," which attached

affidavits of service corresponding to each named Defendant and stating that each Defendant had

been served between August 8, 2016 and August 18, 2016.  (*See* Docket Entry Nos. 7–14.)  Each

affidavit of service represented that a Defendant had been served by "Elite Legal Services of NY,

Inc.," and Plaintiff attached a single copy of the summons that was served on the City of New

York.  (*See* Summons, Docket Entry No. 7-1.)  The summons provides the case number, the

caption, the name and address of Plaintiff's attorney and instructions for answering the Complaint

in accordance with the Federal Rules of Civil Procedure.  (*See id.*)  The summons does not

include the City's name and address, bear the Court's seal or contain the signature of the Clerk of

Court, but the City of New York's Office of Corporation Counsel appears to have stamped the

summons upon receiving it on August 8, 2016.  (*See id.*)

Plaintiff has not detailed her efforts to serve Defendants in compliance with Rule 4, and

thus has not shown good cause for the deficiencies.  (*See* Pl. Opp'n Mem. 24–25.)  The Court

therefore applies the four factors to determine whether to grant Plaintiff further leniency in the

absence of good cause.  *See Soos*, 195 F. Supp. 3d at 467 (applying the factors).

In this case, the three-year statute of limitations applicable to claims under section 1983

will not expire until, at the earliest, October of 2017.  *See Abbas v. Dixon*, 480 F.3d 636, 638 (2d

Cir. 2007) (applying three-year limitations period to actions under section 1983 where the alleged

incidents occurred in New York); (*see also* Am. Compl. ¶¶ 27–29 (alleging that the initial denials

of medical care occurred in October of 2014)).  Next, there is no evidence of prejudice to the City,

which received the summons and timely appeared in the action.  (*See* Summons (stamped as received on August 8, 2016).)  As to the third factor, there is no evidence that the City attempted to conceal the defective service; in fact, it appears that the City gave notice of defective service early in the litigation, (*see* Order dated Aug. 26, 2016).  Finally, as to the fourth factor, the City has identified no prejudice that it would suffer as a result of a further extension to service.

Because the City has identified no prejudice from the errors in the summons, the sole result of granting Plaintiff an extension of time would be to require Defendants to defend the case on the merits.  Accordingly, the Court grants Plaintiff thirty days from the date of this Memorandum and Order to serve a properly signed and sealed summons on each named Defendant, in compliance with Rule 4 of the Federal Rules of Civil Procedure, and to file both an affidavit of service and a copy of the summons as it was served on each Defendant.  If Plaintiff fails to serve the summons or file proof of service with the Court within thirty days, the Court will dismiss the action without prejudice for failure to comply with Rule 4(m).

### c.  Fourth Amendment and Fourteenth Amendment claims

Plaintiff alleges in count one of the Amended Complaint that Defendants violated Nelson's Fourth Amendment and Fourteenth Amendment rights to be "free from unlawful seizure of his person and to be free from cruel and unusual punishment."  (Am. Compl. ¶¶ 86–88.)  The City argues that count one invokes the language of the Eighth Amendment's prohibition on cruel and unusual punishment,[5] and that neither the Fourth nor the Eighth Amendment is applicable to a

---

[5]  As the City notes, the original Complaint contained a count alleging a violation of the Eighth Amendment, and the Amended Complaint removes the Eighth Amendment title but retains the language of the claim.  (*See* Def. Mem. 12.)  The City does not challenge Plaintiff's claim to the extent that it alleges a due process violation, and the Court therefore does not address what it construes to be Plaintiff's due process claim for deliberate indifference to Nelson's medical needs under the Fourteenth Amendment.  To the extent that Plaintiff brings the same claim under the

pre-trial detainee like Nelson.  (Def. Mem. 12.)

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009)).  This is because "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.'" *Id.* (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)); *see also Kingsley v. Hendrickson*, 576 U.S. ---, ---, 135 S. Ct. 2466, 2475 (June 22, 2015) ("[M]ost importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'" (citations omitted)).

In addition to a due process right, pretrial detainees "retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57–58 (2d Cir. 2016).  Courts have considered an inmate's Fourth Amendment rights in two contexts: first, an allegedly unreasonable search of the inmate's person, as in the context of a strip-search, *see Harris*, 818 F.3d at 53–54; and second, an allegedly unreasonable search or seizure of an inmate's belongings, *see Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (discussing inmates' Fourth Amendment right to privacy in the personal effects within their prison cells).  Although the Court has not located precedent that addresses a Fourth Amendment challenge to the "seizure" of a pretrial detainee's *person*, the Supreme Court has explained that "a pretrial detainee can prevail [on a constitutional

---

Eighth Amendment, that claim is dismissed because, as noted below, "a pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

claim] by providing only objective [and not subjective] evidence that the challenged governmental action is not rationally related to a legitimate governmental purpose or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at ---, 135 S. Ct. at 2473–74 (explaining that pretrial detainees are not permitted to be punished but that their rights may be circumscribed in order to preserve internal order and discipline within detention facilities).

The Court dismisses Plaintiff's claim for unreasonable seizure under the Fourth Amendment because the claim is not cognizable. Plaintiff has not pointed to any authority to support her assertion that Defendants' denial of adequate medical care to Nelson constituted an unreasonable seizure under the Fourth Amendment because Nelson was prevented from seeking outside medical care, and the Court has found no authority to support such a claim. Even assuming that Plaintiff could bring such a claim, Plaintiff has not articulated the way in which the alleged seizure was "unreasonable" under the Fourth Amendment or provided "evidence that the challenged governmental action is not rationally related to a legitimate governmental purpose or that it is excessive in relation to that purpose." *See Kingsley*, 576 U.S. at ---, 135 S. Ct. at 2473– 74. Indeed, it is not clear to the Court what practice or conduct Plaintiff challenges as having resulted in the unreasonable seizure of Nelson's person. Accordingly, the Court dismisses Plaintiff's Fourth Amendment claim. *See Harris*, 818 F.3d at 58 (explaining that prison-based Fourth Amendment claims can challenge the reasonableness of a particular search or of a broader prison policy).

### d.   Conspiracy and failure to intercede claims under sections 1983, 1985 and 1986

Plaintiff alleges in counts two and five of the Amended Complaint that Defendants conspired to deprive Nelson of his due process and equal protection rights, in violation of 42 U.S.C. §§ 1983 and 1985, and failed to intercede in the violation of Nelson's rights in violation of

42 U.S.C. § 1986.  (Am. Compl. ¶¶ 95–101, 147–54.)

The City argues that the Amended Complaint does not set forth any factual allegations to support a claim for conspiracy and "contains nothing more than conclusory claims that the [D]efendants 'conspired with each other.'"  (Def. Mem. 14.)  Plaintiff argues that the Amended Complaint sufficiently alleges that Defendants conspired to deny Nelson adequate medical care and then to intentionally cover up the denial of that medical care.[6]  (Pl. Opp'n Mem. 22–23.)

### i. Conspiracy under sections 1983 and 1985

"To prove a [section] 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Wolff v. State Univ. of N.Y.*, --- F. App'x. ---, ---, 2016 WL 8213713, at *1 (2d Cir. Feb. 6, 2016) (citing *Pangburn*, 200 F.3d at 72); *McDonough v. Smith*, No. 15-CV-1505, 2016 WL 7496128, at *11 (N.D.N.Y. Dec. 30, 2016) (quoting *Pangburn*, 200 F.3d at 72); *Bartels v. Inc. Vill. of Lloyd*, 751 F. Supp. 2d 387, 402 (E.D.N.Y. 2010).

To state a claim for conspiracy to interfere with civil rights under section 1985, a plaintiff must allege (1) a conspiracy, (2) with the intent or purpose to deprive a person of equal protection of the law, (3) an act in furtherance of the conspiracy, (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d

---

[6]  Although the Complaint brought claims for conspiracy under sections 1985 and 1986, in addition to section 1983, count five of the Amended Complaint appears to bring a single claim for "neglect/failure to prevent/intercede & conspiracy to deprive rights."  (Am Compl. ¶¶ 147–54.) The Court analyzes the allegations in count five as alleging separate claims for failure to prevent/intercede under section 1983 and for conspiracy under sections 1985 and 1986.

1085, 1087 (2d Cir. 1993)).  "In order to maintain an action under [s]ection 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end.'"  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation omitted).  In addition, a plaintiff must allege that he is a member of a protected class and that the conspirators acted with class-based discriminatory motivation.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006); *Ali v. Connick*, 136 F. Supp. 3d 270, 277 (E.D.N.Y. 2015).

Plaintiff has repeatedly alleged that each of the individual Defendants acted "in concert with one another under color of law" and "conspired with each other to undertake a course of conduct," to deny Nelson adequate medical care.  (Am. Compl. ¶¶ 96, 144, 150–51.)  Plaintiff has not alleged any facts to support a meeting of the minds, however, and the existing allegations are insufficient to support a claim sounding in conspiracy under section 1983 or section 1985.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that [the defendant] acted in concert with a state actor does not suffice to state a [section] 1983 claim . . . ."); *see also Webb*, 340 F.3d at 111 (dismissing section 1985 conspiracy claim because "the plaintiffs have not alleged, except in the most conclusory fashion, that any . . . meeting of the minds occurred among any or all of the defendants"); *Young v. Suffolk County*, No. 09-CV-3325, 2013 WL 491982, at *16 (E.D.N.Y. Feb. 11, 2013) (holding that the plaintiff's "unsubstantiated allegations of purported collaboration" between the defendants were insufficient to defeat summary judgment); *Arredondo v. County of Nassau*, No. 11-CV-710, 2012 WL 910077, at *6 (E.D.N.Y. Mar. 16, 2012) (dismissing complaint where the plaintiff had only made general allegations that the defendants had an understanding without any facts to support the claim).

Moreover, as relevant to Plaintiff's claims under sections 1985 and 1986, Plaintiff has not alleged facts to show that the individuals who allegedly conspired to deprive Nelson of his rights were employees of different institutional or municipal entities.  "[I]t is well settled that there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single organization and their alleged actions were taken in the course of their employment." *Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 413 (E.D.N.Y. 2001) (citing *Girard v. 94th St. and Fifth Ave. Corp.*, 530 F.2d 66, 71 (2d Cir. 1976)); *see also Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007) (affirming dismissal of the conspiracy claim where the co-conspirators were both employees of the same public library); *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (explaining that under the intracorporate conspiracy doctrine, "employees or agents of a single corporate entity, acting within the scope of their employment, are legally incapable of conspiring together" (first citing *Herman v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); and then citing *Girard*, 530 F.2d at 72)); *Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) (applying the intracorporate conspiracy doctrine to bar inmates' conspiracy claims against DOCCS).  Here, Plaintiff's allegations suggest that most or all Defendants who allegedly deprived Nelson of his rights were employed in some capacity by the City.  Without further allegations that some of the Defendants conspired with others who worked outside of their institutional entity, the Court finds that the intracorporate conspiracy doctrine would preclude any City employees' liability on Plaintiff's conspiracy claims under sections 1985 and 1986.

In addition, Plaintiff has not plausibly alleged that Defendants acted with discriminatory motivation, as is required under section 1985.  *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (denying summary judgment on the plaintiff's section 1985 conspiracy claim where he did not "come forward with at least some credible evidence that the actions of the

individual [defendants] were motivated by racial animus or ill-will"); *Mian*, 7 F.3d at 1087 ("Furthermore, the conspiracy must also be motivated 'by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" (quoting *United Bhd. Of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983))).  The Amended Complaint states only that Defendants' conduct "was motivated by racial animus and animus/bias against [Nelson] based on his inmate status, based upon his race, and based upon [] Defendants' desire to injure, oppress, frighten, harass and intimidate [Nelson] because of his race . . . to wit: African-American/Black."  (Am. Compl. ¶ 89.)  These allegations, without more, are insufficient to plausibly demonstrate that "the conspiracy [was] motivated by racial animus." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 1999); *see also Ali*, 136 F. Supp. 3d at 277.

Plaintiff has not stated a claim for conspiracy under section 1983 or section 1985, and the Court accordingly dismisses the conspiracy claims from the Amended Complaint.

### ii.   Failure to intercede claim under section 1986

Plaintiff alleges in count five of the Amended Complaint that Defendants "had the power and authority to prevent" others from conspiring to deny Nelson adequate and timely medical care, but that they "willfully and/or negligently neglected and refused to prevent" the unlawful conduct.  (Am. Compl. ¶ 151.)  In particular, Plaintiff alleges that "Defendants' agents" — "Nurse Jones and the Hispanic doctor/nurse" — "had the knowledge that [Nelson's] rights were being violated, that he was being denied timely and proper medical care, that he needed medical care and that he requested [it], and, had opportunities to intercede on behalf of [Nelson] to prevent the unlawful conduct committed against him" but refused to do so.  (*Id.* ¶ 152.)

Section 1986 provides a cause of action against anyone who, "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and

having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at 1088.  Thus, "a [section] 1986 claim must be predicated on a valid [section] 1985 claim." *Id.*  Because Plaintiff has not stated a claim for conspiracy under section 1985, the Court dismisses Plaintiff's claim for failure to intercede under section 1986.

   e.   **Supervisory liability claim**

Plaintiff alleges in count three of the Amended Complaint that Defendants Ponte and certain John and Jane Doe "supervisor correction officers, lieutenants, sergeants, captains, deputy commissioners, assistant deputy commissioners, medical supervisors and/or any and all other supervisors with knowledge" failed to supervise and train their subordinates, who denied adequate medical care to Nelson.  (Am Compl. ¶¶ 104–08.)

The City argues that Plaintiff has not established the personal involvement of either Ponte or any of the Doe supervisors.  (Def. Mem. 14–15.)  Plaintiff argues that she has sufficiently pled that Ponte is "in complete command and control of the entire [New York City] Department of Corrections and is in charge of and knows what occurs and does not occur there — including, but not limited to, the providing of medical care."  (Pl. Opp'n Mem. 23.)

"Liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because [section] 1983 requires individualized, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. at 676).  Instead, "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. at 676).  Thus, "each Government official . . . is only liable for his or her own misconduct." *Id.* (quoting *Iqbal*, 556 U.S. at 677); *see also Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir.

2003) ("It is well-settled . . . that the doctrine of respondeat superior standing alone does not suffice to impose liability on for damages under section 1983 on a defendant acting in a supervisory capacity.").

The Second Circuit has held that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Raspardo*, 770 F.3d at 116 (alteration in original) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). In addition, a plaintiff must show that the supervisor's actions proximately caused the plaintiff's constitutional deprivation. *Id.* "Gross negligence" denotes a higher degree of culpability than "mere negligence." *Id.* (citing *Poe v. Leonard*, 282 F.3d 123, 140 n.14, 146 (2d Cir. 2002)). "It is 'the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of . . . harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'" *Id.* (alterations in original) (internal citations and quotation marks omitted).

Gross negligence is satisfied where "the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured." *Id.* (citing, *e.g.*, *Johnson v. Newburgh Enlarged Sch. Dist*, 239 F.3d 246, 255 (2d Cir. 2001) (holding that where complaint alleged defendant-supervisors were aware teacher assaulted students on four prior occasions before the teacher's assault of plaintiff, "a jury could find the supervisors personally

involved in the unconstitutional deprivation on the basis that they were . . . grossly negligent in supervising" the teacher)); *see also Poe*, 282 F.3d at 146 (holding that the plaintiff failed to identify issue of fact regarding the defendant-supervisor's alleged gross negligence where the supervisor failed to review his subordinate's personnel file and was aware of inappropriate but not sexually provocative demands the employee had made to other women); *Meriwether v. Coughlin*, 879 F.2d 1037, 1047–48 (2d Cir. 1989) (affirming finding of supervisory liability where evidence showed supervisors knew or should have known that the plaintiff-inmates' reputations as alleged planners of violent insurrection would expose them to extreme hostility form the guards, yet took no precautions for the inmates' safety). However, a supervisor is not grossly negligent "where the plaintiff fails to demonstrate that the supervisor knew or should have known of a problematic pattern of employee actions or where the supervisor took adequate remedial steps immediately upon learning of the challenged conduct." *Raspardo*, 770 F.3d at 117; *see also Hayut*, 352 F.3d at 753; *Colon*, 58 F.3d at 873. "A plaintiff pursuing a theory of gross negligence must prove that a supervisor's neglect caused his subordinate to violate the plaintiff's rights in order to succeed on her claim." *Raspardo*, 770 F.3d at 117 (citing *Poe*, 282 F.3d at 140).

Here, Plaintiff has not alleged that Ponte or the Doe supervisors participated directly in the alleged constitutional violation, that they were informed of the wrong and failed to take remedial action, that they created a policy or custom that allowed their subordinates to act deliberately indifferent to Nelson's medical needs, or that they were deliberately indifferent to information that unconstitutional acts were occurring. At most, Plaintiff alleges that Ponte and the Doe supervisors were grossly negligent in supervising the other individual defendants who perpetrated the alleged unconstitutional acts. (*See* Am. Compl. ¶¶ 107–08.) Even these allegations are conclusory and fail to demonstrate that Ponte or any other supervisor "knew or should have

20

known of a problematic pattern" that proximately caused the unconstitutional acts leading to

Nelson's death. *See Raspardo*, 770 F.3d at 117.  Plaintiff alleges only that the supervisor

Defendants "had a duty to supervise" that they failed to exercise "in a reasonable [manner] and

not in a negligent and/or intentionally reckless, wanton, deliberately indifferent and/or malicious

manner." (Am. Compl. ¶¶ 104, 108.)  These allegations do not plausibly state that Ponte and the

Doe supervisors  "ha[d] reason to know of facts creating a high degree of risk of . . . harm to

[Nelson] and deliberately act[ed] or fail[ed] to act in conscious disregard or indifference to that

risk." *Raspardo*, 770 F.3d at 116.  Accordingly, Plaintiff has not stated a claim for supervisory

liability, and the Court dismisses count three of the Amended Complaint.

### f.  Municipal liability claim

Plaintiff alleges in count four of the Amended Complaint that Defendants "through their

official policy-makers developed, created, facilitated, enabled and/or maintained policies,

practices and customs exhibiting deliberate indifference to and/or reckless disregard for the lives,

safety, health, physical health" and wellbeing of inmates who were in Defendants' "exclusive

custody and care," and those policies led to Nelson's injuries and death.  (Am. Compl. ¶ 112.)

The City argues that Plaintiff's allegations that Defendants instituted or enabled a policy

or custom that led to Nelson's constitutional injuries are "speculative and conclusory" and do not

state a claim for municipal liability.  (Def. Mem. 15.)  Plaintiff argues that Defendants have

displayed a deliberate indifference to the medial needs of the inmates in their care, as evidenced

by the City's refusal to renew its contract with Corizon at the end of 2015, and that Nelson's

death was a "highly predictable consequence" of such a policy of deliberate indifference.  (Pl.

Opp'n Mem. 19–21.)

To establish a municipal liability claim, "a plaintiff is required to plead and prove three

elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). An official municipal policy or custom may be: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions). "Although there is no heightened pleading requirement for complaints alleging municipal liability under [section] 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301–02 (S.D.N.Y. 2015) (internal citations omitted) (first citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); and then citing *Iqbal*, 556 U.S. at 678). To survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Here, Plaintiff alleges that Defendants' conduct was "performed and . . . enabled pursuant to a custom and practice that, while not formally approved in writing by Defendants . . . ha[s] been adopted and practiced as a practice and custom . . . so widespread so as to have the force of law." (Am. Compl. ¶ 120.) Plaintiff also alleges that the City has perpetuated a "policy-in-practice" of failing to train and supervise its employees, "evidencing deliberate indifference" to their conduct. (*Id.* ¶¶ 121–23.) The Court understands Plaintiff to assert multiple theories of municipal liability: (1) a widespread practice sufficient to constitute a policy or custom; (2) a failure to train employees to identify the medical needs of inmates; and (3) a failure to supervise or discipline officers despite having notice of inadequate medical care. (*Id.* ¶¶ 121–40, 142.) The Court considers the allegations as to each theory.

### i. Widespread practice

As noted above, a plaintiff "need not identify an express rule or regulation," to impose municipal liability, but can show that the practice "of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law." *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)). In other words, a plaintiff can show that there is "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485–87 (1986)). "[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81 (citations omitted); *Edrei v. City of New York*, --- F. Supp. 3d ---, ---, 2017 WL 2367992, at *9 (S.D.N.Y. May 31, 2017) ("Proof of a single incident of unconstitutional activity is usually insufficient to demonstrate the existence of a policy, . . . .").

Indeed, before the actions of subordinate city employees can give rise to section 1983 liability, the unlawful practice must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Newton v. City of New York*, 779 F.3d 140, 156 n.18 (2d Cir. 2015) (quoting *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

There is no set number of incidents that make a practice "widespread," and courts have found a wide range of instances insufficient to plausibly allege a municipal custom. *See Jones*, 691 F.3d at 85 (finding that the plaintiff showed "two instances, or at the most three" cases of unconstitutional conduct by a "small number of officers" that occurred "over a period of several years," which "fell far short of showing a policy, custom, or usage of officers" or conduct "so persistent that it must have been known to supervisory authorities"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (stating that the plaintiff "identifie[d], at most, only four examples where the defendants might have disclosed positive drug test results," and holding that the "evidence [fell] far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability" (citations and internal quotation marks omitted)); *Cruz v. City of New York*, No. 15-CV-2265, 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016) ("[E]ight cases cited from a municipality (New York) far bigger than Newburgh, makes the number of cited cases particularly inadequate to demonstrate plausibly a municipal custom."); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (finding thirteen instances of similar excessive force allegations over a four year period were insufficient to state a custom where, during that time period "hundreds, if not thousands, of arrests were made").

Here, while Plaintiff identifies three other cases in which other plaintiffs allege that the City provided inadequate medical care at its jails and detention facilities, (*see* Am. Compl. ¶ 116),

Plaintiff has not plausibly alleged that the unconstitutional deprivation of medical care is so widespread as to constitute a municipal custom. First, the three cases that Plaintiff identifies do not appear to have resulted in an adjudication of wrongdoing by the City. (*Id.* ¶ 116 (citing two cases that settled and a third that is pending).) Allegations from other complaints, as opposed to adjudications by courts, do not offer strong support for a municipal liability claim. *See Cruz*, 2016 WL 234853, at *5 (finding plaintiff's reliance on five civil cases asserting false arrest and malicious prosecution claims insufficient to establish a custom or policy for *Monell* purposes as "[a]ll of the cases cited settled short of adjudication on the merits"); *Tieman*, 2015 WL 1379652, at *17 (finding "unsubstantiated allegations in lawsuits and complaints" in other actions "not persuasive" for purposes of alleging a widespread policy or custom).

Furthermore, it is not clear from Plaintiff's description of the cases that the factual allegations were similar to those here or that the City's employees engaged in similar conduct pursuant to the same alleged policy or custom. Even assuming that the City's employees engaged in the same conduct in each case, it does not follow that unconstitutional deprivation of medical care was so widespread as to constitute a municipal policy or custom. *See Rubio v. County of Suffolk*, 328 F. App'x 36, 38 (2d Cir. 2009) ("[A] few violations by a small group of subordinate County employees with no policymaking authority [cannot] amount to the pervasive and widespread custom or practice necessary for municipal liability." (alteration in original)).

Plaintiff points to the City's decision not to renew its contract with Corizon at the end of 2015 as proof that "the systemic deliberate indifference to and reckless disregard for the medical needs of inmates like [Nelson] was so obvious and so widespread so as to form a custom and practice," (Am. Compl. ¶ 117), but provides no evidence that the non-renewal was related to Corizon's alleged treatment of inmates. Thus, although Plaintiff plausibly alleges that at least

some Defendants were deliberately indifferent to Nelson's medical needs, Plaintiff fails to allege corresponding facts from which the Court can infer that Defendants acted pursuant to an informal municipal policy or custom.

### ii. Failure to train

"[A] city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). To show deliberate indifference, a plaintiff must allege facts plausibly showing that (1) "a policymaker [knew] 'to a moral certainty' that city employees will confront a particular situation;" (2) "the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;'" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Wray*, 490 F.3d at 195–96 (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)); *see Reynolds*, 506 F.3d at 192 (same).

"[W]here . . . a city has a training program, a plaintiff must . . . 'identify a specific deficiency in the city's training program and establish that that deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation.'" *Wray*, 490 F.3d at 196 (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)). "The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not '[t]hat a particular officer may be unsatisfactorily trained' or that 'an otherwise sound program has occasionally been negligently administered,' and that a 'hypothetically

26

well-trained officer' would have avoided the constitutional violation." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440–41 (2d Cir. 2009) (quoting *Canton*, 489 U.S. at 390–91); *see Edrei*, --- F. Supp. 3d at ---, 2017 WL 2367992, at *10 (finding that the plaintiffs plausibly alleged a failure-to-train claim where the City armed police officers with powerful long-range acoustic devices and placed those officers in "expectantly volatile protests" without training them).

Here, Plaintiff fails to allege facts to state a failure-to-train claim.  Plaintiff does not include any allegations about relevant training programs, or lack thereof, for medical health professionals who work at City jails and detention facilities.  Instead, Plaintiff relies on the same conclusory allegation throughout the Amended Complaint — that Defendants "failed to adequately screen for hiring and retention and failed to discipline, train, or otherwise supervise and control their officers, doctors, nurses, medical staff, medical personnel and/or employees." (Am. Compl. ¶ 113.)  This general and conclusory allegation is insufficient to plausible allege "a specific deficiency in the [C]ity's training program . . . [that] is closely related to [the] ultimate injury, such that it 'actually caused' [Nelson's] constitution deprivation."  *See Wray*, 490 F.3d at 196.  Accordingly, Plaintiff has failed to state a claim for municipal liability based on a failure-to-train theory.

### iii.   Failure to supervise or discipline

A failure to "supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  *Wray*, 490 F.3d at 195–96 (quoting *Canton*, 489 U.S. at 388).  Similarly, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct

within the meaning of *Monell*." *Batista*, 702 F.2d at 397 (collecting cases). "Where plaintiffs seek to hold a municipality liable under a theory of failure to supervise or discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference." *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *Canton*, 489 U.S. at 388–89); *see Wray*, 490 F.3d at 195 ("The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." (citing *Canton*, 489 U.S. at 388)). Under that standard, "where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs," deliberate indifference "may be inferred." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (alterations, citations, and internal quotation marks omitted); *see also Crenshaw v. N.Y.C. Hous. Auth.*, --- F. App'x ---, ---, 2017 WL 2644637, at *4 (2d Cir. June 20, 2017) (explaining that where a policymaker "exhibits deliberate indifference to constitutional deprivations caused by subordinates," the "acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983" (internal quotation marks omitted) (citing *Amnesty Am.*, 361 F.3d at 126)).

Plaintiff has failed to plead a municipal liability claim based on a theory of failure to supervise or discipline. Plaintiff makes no factual allegations to support her claim that the individual Defendants were not appropriately supervised or that the institutional Defendants failed to supervise their employees; she states only that "Defendants knew of the systemic failure/refusal to provide proper, timely and adequate medical care to inmates like [Nelson], . . . as the City has been sued for years for failing to provide inmates" with adequate medical care, and that Defendants foreseeably allowed their employees to "violate the Constitutional rights of inmates"

and endanger inmates' health and safety by failing to punish employees for unlawful conduct. (Am. Compl. ¶¶ 114, 116.) Plaintiff's allegations do not allow the Court to infer that there was an "obvious" need "for more or better supervision to protect against constitutional violations," or that Defendants failed to heed that need. *See Cash*, 654 F.3d at 334.

Because Plaintiff has not adequately alleged any theory of municipal liability, the Court dismisses Plaintiff's claim for municipal liability.

### g.    "Caused to be subjected"

Plaintiff alleges in count six of the Amended Complaint that Defendants "directly and proximately caused [Nelson] to be subjected to . . . unlawful seizure of his person, cruel and unusual punishment, denial of medical treatment, denial of due process" and various other injuries, in violation of section 1983. (Am. Compl. ¶¶ 155–59.) The City argues that Plaintiff fails to allege a valid claim in count six. (Def. Mem. 17.) Plaintiff does not respond to this argument.

To the extent that Plaintiff seeks to bring a claim for a violation of Nelson's due process or other constitutional rights, that claim appears to be duplicative of her claim in count one. The Court otherwise dismisses any claim for "caused to be subjected," which is not a cognizable claim under section 1983.

### h.    Intentional and negligent infliction of emotional distress

Plaintiff alleges in count nine of the Amended Complaint that Defendants "engaged in extreme and outrageous conduct and intentionally, recklessly, wantonly, maliciously and/or negligently caus[ed] [Nelson], Plaintiff and [Nelson's] two minor children to suffer severe emotional distress." (Am. Compl. ¶ 203.)

The City argues that Plaintiff's allegations are conclusory and that in New York, negligent

infliction of emotional distress and intentional infliction of emotional distress are theories of recovery that can only be invoked when other tort remedies are not available. (Def. Mem. 17.) Plaintiff does not respond to the City's argument.

### i.   Intentional infliction of emotional distress claim

To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege that the defendant engaged in "extreme and outrageous conduct, which so transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985)). "To prevail on such a claim, a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Id.* at 157–58 (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)); *see also Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ("Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto*, 164 F.3d at 827.

Moreover, intentional infliction of emotional distress is a "highly disfavored [tort] under New York law," *Turley*, 774 F.3d at 158 (quoting *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345–46 (S.D.N.Y. 2000)), and it is "to be invoked only as a last resort," *id.* (quoting *McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc.*, 682 N.Y.S.2d 167 (App. Div. 1998)). "[A]lthough the

New York Court of Appeals has not set forth detailed guidelines for when the tort [of intentional infliction of emotional distress] may be available, it has cautioned that a claim for [intentional infliction of emotional distress] may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Id.* at 159 (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557–58 (1978)); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) ("[U]nder New York law, an intentional infliction tort 'may be invoked only as a last resort . . . to provide relief in those circumstances where traditional theories of recovery do not.'" (citations omitted)); *Lloyd v. City of New York*, --- F. Supp. 3d ---, ---, 2017 WL 1207838, at \*19 (S.D.N.Y. Mar. 31, 2017) (quoting *Salmon*, 802 F.3d at 256). For example, "[o]ther New York courts have applied this *dictum* to exclude claims for intentional infliction where a cause of action for defamation may be asserted on the facts of the case." *Turley*, 774 F.3d at 159 (collecting cases).

Here, Plaintiff fails to plead a claim for intentional infliction of emotional distress because her allegations are wholly conclusory and state only the elements of the claim, without factual allegations to explain what particular conduct was "extreme and outrageous" and from what facts the Court can infer that Defendants intended to cause, or recklessly disregarded the risk of causing, severe emotional distress. *See Turley*, 774 F.3d at 159; (*id.* ¶¶ 202–207). In addition, Plaintiff's claim for "negligent and/or intentional infliction of emotional distress" stems from the same conduct as her claims for wrongful death, negligence, medical malpractice and loss of consortium — namely, Defendants' alleged deliberate indifference to Nelson's medical needs and the resulting injuries and death to Nelson. The Court therefore dismisses Plaintiff's claim for intentional infliction of emotional distress.

### ii.   Negligent infliction of emotional distress claim

"Under New York law, a plaintiff may establish [a claim for negligent infliction of

emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'"

*Lloyd*, --- F. Supp. at ---, 2017 WL 1207838, at *20 (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)).  The "bystander theory" provides that

> A defendant's conduct is negligent [where it creates] an *unreasonable risk of bodily harm to a plaintiff* and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of a serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence.

*Baker*, 239 F.3d at 421 (emphasis added) (quoting *Bovsun v. Sanperi*, 61 N.Y.2d 219, 224 (1984)).  Under the "direct duty" theory, "a plaintiff suffers emotional distress caused by [a] defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety."  *Id.* (citation and internal quotation marks omitted).

Plaintiff has not stated a claim for negligent infliction of emotional distress under either theory.  Based on the facts in the Amended Complaint, Plaintiff did not suffer an "unreasonable risk of bodily harm" from any "contemporaneous observation" of Defendants' alleged conduct toward Nelson, which conduct would have to have caused "serious physical injury or death" in Plaintiff's presence.  *See Baker*, 239 F.3d at 421.  Nor has Plaintiff pled a direct duty theory, under which Defendants would have had to "unreasonably endanger" Plaintiff's "own physical safety."  *See id.*

The Court therefore dismisses Plaintiff's claim for negligent infliction of emotional distress.

## III.  Conclusion

For the foregoing reasons, the Court denies the City's motion to dismiss for insufficient service of process and personal jurisdiction.  The Court grants the City's motion to dismiss for failure to state a claim and dismisses Plaintiff's Fourth and Eighth Amendment claims, conspiracy

claims under sections 1983 and 1985, failure to intercede claim under section 1986, as well as Plaintiff's claims for supervisory liability, municipal liability, "caused to be subjected" under section 1983 and negligent and intentional infliction of emotional distress.

The Court grants Plaintiff thirty days from the date of this Memorandum and Order to serve Defendants with a signed and sealed summons and the Amended Complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.  If Plaintiff fails to serve Defendants in compliance with Rule 4 within thirty days, the Court will dismiss the Amended Complaint.  If Plaintiff properly serves Defendants within thirty days, her claims for deliberate indifference to Nelson's medical needs, medical malpractice, wrongful death, general negligence, loss of consortium and punitive damages will proceed.

SO ORDERED:

_____ s/ MKB _____
MARGO K. BRODIE
United States District Judge

Dated: July 21, 2017
       Brooklyn, New York